UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| ANNA C. SLATTEN | * | CIVIL ACTION NO. 09-0717 |
| VERSUS | * | JUDGE TOM S. STAGG |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Anna Slatten filed the instant application for Title II Disability Insurance Benefits on April 27, 2004. (Tr. 157-159). She alleged disability since March 29, 2004, because of bi-polar disorder, with psychosis. (Tr. 199-200). The application was denied at the initial stage of the administrative process. (Tr. 76, 94-97). Thereafter, Slatten requested and received a September 15, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 536-547). However, in an August 2, 2006, written decision, the ALJ determined that Slatten was not disabled under the Act. (Tr. 77-88). Accordingly, Slatten appealed the adverse decision to the Appeals Council. On December 18, 2006, the Appeals Council granted Slatten's request for review, vacated the

ALJ's decision, and remanded the case for further proceedings. (Tr. 140-141).[1]

A new hearing was held before a different ALJ on May 30, 2007. (Tr. 548-573). However, in a September 18, 2007, written decision, the ALJ determined that Slatten was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation process, that, when not engaged in substance abuse, she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 21-46). Slatten appealed the adverse decision to the Appeals Council, but to no avail. (Tr. 9-12). Therefore, the ALJ's decision became the final decision of the Commissioner. *Id*.

On May 1, 2009, Slatten sought review before this court. She alleges the following errors,

    (1)    the ALJ's determination that plaintiff's drug addiction was a contributing factor material to her disability is not supported by substantial evidence; and

    (2)    the Appeals Council's failure to review post-decision evidence did not comply with relevant legal standards.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.

---

[1] During the pendency of her appeal, Slatten filed a new application for benefits on August 28, 2006. (Tr. 166-168). The application was denied at the initial stage of the administrative process. (Tr. 93, 145-148). Upon remand, the ALJ associated the two applications and noted that the latter application was considered a duplicate claim. (Tr. 25).

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled

under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One and Two

    The ALJ determined at Step One of the sequential evaluation process that Slatten did not engage in substantial gainful activity during the relevant period. (Tr. 37). At Step Two, he found that Slatten has experienced severe impairments of polysubstance dependency in full remission;

bipolar disorder; generalized anxiety disorder; obsessive-compulsive disorder; panic disorder; and personality disorder, not otherwise specified with dependent and avoidant features. (Tr. 37). By the time of the ALJ's decision, however, Slatten's only severe impairment was bipolar disorder. *Id*.

## II.     Step Three

At Step Three, the ALJ determined that from March 29, 2004, through October 10, 2005, Slatten's severe impairments, including substance abuse disorder, met sections 12.04, 12.06, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 39). However, he further found, that if, during this period, Slatten had ceased substance abuse, then her impairments would not have been severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 40). Similarly, for the period after October 10, 2005, when Slatten no longer was engaged in substance abuse, the ALJ found that her impairments did not entitle her to a favorable determination at Step Three. (Tr. 40-41).

Under the Social Security Act, as amended, an individual will not be considered disabled for purposes of disability insurance benefits if alcoholism or drug addiction was a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 423(d)(2)(C). "Drug or alcohol abuse is material to a disability if the ALJ would not 'find [the claimant] disabled if [the claimant] stopped using drugs or alcohol.'" *Brown v. Apfel*, 192 F.3d. 492, 499 (5th Cir. 1999) (quoting, 20 C.F.R. § 416.935(b)(1)).

Before considering whether drug and alcohol abuse is a contributing material factor, however, there must first be a finding of disability. *Oettinger v. Barnhart,* 2002 WL 31422308, *4 (W.D. Tex. Sept. 4, 2002) (citation omitted); *see also*, 20 C.F.R. §§ 416.935(a) and 404.1535(a)).

5

As an initial matter, plaintiff appears to question the sufficiency of the ALJ's preliminary determination that while abusing drugs, her mental impairments were of listing-level severity. However, the ALJ applied the psychiatric review technique and found Slatten disabled during her period of substance abuse by crediting Slatten's various diagnoses, Slatten's own testimony, her multiple periods of decompensation that resulted in hospitalization, and Dr. Harrold's assessment. *See* Tr. 34, 39-40. Thus, this determination is supported by substantial evidence.

Plaintiff next challenges the ALJ's determination that plaintiff's drug addiction was a contributing factor material to her disability. She contends that the ALJ impermissibly favored the opinion of a non-examining medical expert, Barbara Felkins, M.D.,[2] over the opinion of her treating psychiatrist, James Harrold, M.D.[3] The ALJ acknowledged that at least with regard to

---

[2] On October 26, 2005, the ALJ sent interrogatories to a medical expert, Barbara Felkins, M.D. (Tr. 392-396). Felkins submitted her responses on November 4, 2005. *Id.* She indicated that Slatten suffered from poly-substance abuse, severe – primary disorder; Bipolar I - moderate maybe not even a diagnosis; obsessive compulsive disorder - mild; panic disorder - moderate, possibly secondary to polysubstance abuse; pain disorder - no records from any treating source; osteoarthritis - not proven in the record; history of cancer; and scoliosis - not proven in the record. *Id.* Felkins opined that if Slatten remained sober for nine months to one year, she may not even have a psychiatric diagnosis. *Id.* She noted that Slatten had received no therapy or treatment for chronic pain. *Id.* There was no evidence at all to support scoliosis or osteoarthritis. *Id.* Felkins indicated that Slatten met the requirements of Listing 12.09 since March 29, 2004. *Id.* She further opined that substance abuse was material to the finding of disability. *Id.* She indicated that as of February 2005, Slatten was still using street drugs. *Id.* Felkins stated that Slatten could return to work as a nurse or a less stressful occupation if she remained sober for any significant period of time. *Id.*

Felkins also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 397-398). She indicated that, when sober, Slatten had no limitation of functioning. *Id.*

[3] On March 15, 2006, Dr. Harrold completed a Mental Impairment Questionnaire submitted by plaintiff's counsel. (Tr. 412-416). He noted that he treated Slatten from March 30, 2004, through August 25, 2005. *Id.* He checked boxes indicating that Slatten suffered severe limitations of functioning. *Id.* Harrold attributed the limitations to effects of psychopathology, chronic pain pathology, and chronic dependency. *Id.* He did not believe that Slatten was a malingerer. *Id.* He indicated that her impairments, other than drug or alcohol abuse, were

the issue of whether plaintiff's substance abuse was a material factor contributing to her disability, the opinions of Felkins and Harrold were diametrically opposed.

Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See, Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted). Moreover, a contradictory report by a non-examining physician does not provide good cause to disregard the opinion of the treating physician or psychologist. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (citation omitted). Also, "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).

Nonetheless, even in the absence of countervailing medical evidence from another examining physician, an ALJ may still reject the opinion of a treating physician – provided the ALJ "performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000). However, if the ALJ determines that the treating physician's records are inconclusive or otherwise

---

disabling by themselves. *Id.* He further opined, via box-check, that her mental and physical impairments would still be disabling even if she stopped abusing drugs or alcohol. *Id.*

7

inadequate, "absent other medical opinion evidence based on personal examination or treatment of the claimant," the ALJ is obliged to re-contact the treating physician for clarification. *Id*. (emphasis added).

In this case, the ALJ meticulously applied the factors set forth in § 404.1527(d) to Dr. Harrold's opinion before declining to accord Harrold's opinion "controlling" or greatest weight on the issue of materiality. (Tr. 33-37).[4] In so doing, the ALJ emphasized more recent medical records that established the effects of her impairments after she had stopped abusing substances. *Id*. Indeed, during a November 17, 2006, psychological consultation, plaintiff conceded that substance abuse exacerbated her anxiety. (Tr. 499-501). Although these records tended to support Dr. Felkins' ultimate opinion on materiality, the ALJ further found that, unlike Dr. Felkins' finding, the records confirmed that plaintiff's bi-polar disorder remained a severe

---

[4] To the extent that plaintiff contends that the ALJ was required to re-contact Dr. Harrold, the regulations provide that the Commissioner will seek additional evidence or clarification from a treating source when: 1) the report from the source contains a conflict or ambiguity that needs to be resolved; 2) the report does not contain all of the necessary information; or 3) the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e). However, an ALJ's failure to adequately develop the record does not automatically compel reversal. *See Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.) (citing *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984)). To obtain reversal because of an ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996). "To establish prejudice, a claimant must show that [she] could and would have adduced evidence that might have altered the result." *Id.* (internal quotes omitted). Something more is required than mere speculation that the additional evidence might have made a difference (e.g., a supporting statement from the doctor). *Hyde, supra*. Accordingly, plaintiff has not demonstrated any prejudice from the ALJ's failure to re-contact Dr. Harrold.

The court further observes that the Commissioner is not required to seek additional evidence from a treating source when he knows that the source cannot or will not provide the information. 20 C.F.R. § 404.1512(e)(2). The record indicates that plaintiff's counsel had a difficult time obtaining responses to the questionnaire that he submitted to Dr. Harrold. *See e.g.*, Tr. 551.

impairment – even during periods that she was not engaged in substance abuse.[5] Accordingly, he proceeded to assess her residual functional capacity.

### III.  Residual Functional Capacity

The ALJ determined that, when not engaged in substance abuse, Slatten retained the residual functional capacity for the full range of work at all exertional levels,

> reduced by a mild ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and moderate limitations in the following areas: the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to set realistic goals or make plans independently of others.

(Tr. 41).

In so deciding, the ALJ accorded "significant" weight to the November 22, 2006, Mental Residual Functional Capacity Assessment completed by non-examining agency psychologist, Jack L. Spurrier, Ed.D. (Tr. 43, 502-505). The ALJ remarked that Spurrier's assessment was well-supported and was *not* inconsistent with the ALJ's own findings. (Tr. 36). Inexplicably, however, the ALJ's residual functional capacity assessment included a "*mild* ability [sic] to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" whereas, Spurrier indicated that Slatten suffered a "moderate" limitation of functioning in this area. *See* Tr. 43 and 502.

---

[5] The ALJ's determination is also supported by a psychiatric review technique completed by an agency psychologist on November 22, 2006. (Tr. 485-498).

The ALJ provides no justification in the medical record or from plaintiff's testimony to support this deviation from the agency psychologist's assessment.[6] Rather, it is apparent that the ALJ changed the severity of this particular limitation from "moderate" to "mild" in response to the vocational expert's testimony that a "moderate" limitation in punctuality and attendance would preclude not only the hypothetical claimant's ability to perform her past relevant work, but also all other jobs. (Tr. 562). The vocational expert defined a "moderate" limitation as still able to perform the job "satisfactorily," which is the same definition that the ALJ accorded to the term. (Tr. 42).

In sum, the ALJ appears to have autonomously derived at least one component of plaintiff's residual functional capacity. (Tr. 30-31). However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

---

[6] In fact, on the form completed by the agency psychologist, characterizing a limitation as "mild" was not even an available option. *See* Tr. 502.

## IV. Step Five and Remand

Because the foundation for the ALJ's Step Five determination (and his related finding that, absent substance abuse, plaintiff was not disabled) was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, is likewise not supported by substantial evidence.[7]

Plaintiff urges the court to enter a judgment awarding benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

---

[7] The court need not reach plaintiff's remaining assignment(s) of error, i.e., evidence presented to the Appeals Council; it may be addressed upon remand.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 19th day of July 2010.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE